UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAY LYNN DENNIS,

           Plaintiff,

v.

JEREMY HOWARD, *et al.*,

           Defendants.

_____/

Civil Action No. 22-11118

George Caram Steeh
United States District Judge

David R. Grand
United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 22)**

*Pro se* plaintiff Ray Lynn Dennis ("Dennis"), a state prisoner currently incarcerated at the Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan, brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections' officer Ticci Zirker ("Zirker") for failure to protect her from an assault by her cellmate. (ECF No. 1, PageID.4; *see also* ECF No. 7[1]). The case has been referred to the undersigned for all pretrial purposes pursuant to 28 U.S.C. § 636(b). (ECF No. 12).

On December 14, 2023, defendant Zirker filed a Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 22). Dennis then filed a response, and Zirker filed a reply. (ECF Nos. 26, 27, 28).

---

[1] On September 27, 2022, the Honorable George Caram Steeh screened the complaint pursuant to 28 U.S.C. § 1915(g) and dismissed all of Dennis' claims against Warden Jeremy Howard. (ECF No. 7).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.   **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that defendant Zirker's Motion for Summary Judgment **(ECF No. 22)** be **GRANTED**.

II.  **REPORT**

   A.   **Background**

In screening the complaint, the Honorable George Caram Steeh summarized the allegations in Dennis' complaint, as follows:

> The plaintiff alleges . . . a Corrections Officer [Zirker] failed to protect her from an assault by her cellmate. (ECF No. 1, PageID.4.) . . . Plaintiff Dennis alleges she was attacked by her "bunky," Briana Chase Jones, on June 20, 2021, in their cell. (ECF No. 1, PageID.13, 16.) The plaintiff was choked until she could not breathe, was stabbed in the leg five times with a pen, and her "hair was pulled out by the handful." (*Id.* at PageID.16.) Another cellmate ran to get assistance for the plaintiff. (*Id.*) Defendant corrections officer [Zirker] knew the plaintiff was being beaten, but took no action until after the plaintiff escaped from the attack. (*Id.* at PageID.13, 16-17.) The plaintiff lists a Washtenaw County case number against Jones, suggesting she pressed charges over the assault. (*Id.* at PageID.13.)

(ECF No. 7, PageID.43-44).

Defendant Zirker now moves for summary judgment on Dennis' claims against her, arguing that Dennis failed to properly exhaust her administrative remedies before filing the instant lawsuit. (ECF No. 22).

2

**B.    Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative

showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

In her motion, defendant Zirker argues that summary judgment is warranted on Dennis' claims against her because Dennis failed to properly exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 16, PageID.68). The Court agrees.

*The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. In determining whether a plaintiff has properly exhausted her claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 200 (2007). Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See id.* at 216; *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019).

4

### *The MDOC's Exhaustion Procedures*

In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (ECF No. 22-2, PageID.107). According to the Policy, "[g]rievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures." (*Id.* at ¶ F).

A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before she can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ C). The Policy provides that if a prisoner cannot resolve her dispute with the staff member involved, she has five business days to file a Step I grievance. (*Id*. at ¶¶ Q, W). Once filed, "[a] Step I grievance shall be responded to within 15 business days after receipt of the grievance unless an extension is granted . . ." (*Id.* at ¶ Z).

If the prisoner is dissatisfied with the Step I response, she may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ DD). If the grievant is dissatisfied with, or does not receive, a Step II response, she has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ HH).

### *Dennis Fails to Raise a Material Question of Fact as to Whether She Properly Exhausted a Grievance Against Zirker*

In her motion, Zirker argues that Dennis failed to exhaust through Step III any claim against her, as the record reflects that Dennis "did not pursue through Step III any grievances that she filed at Step I on or after June 20, 2021, the day CO Zirker allegedly failed to protect her." (ECF No. 22, PageID.102). Attached to Zirker's motion is a copy of the Policy (ECF No. 22-2), as well as Dennis' "MDOC Prisoner Step III Grievance Report," which shows that Dennis did not pursue through Step III any relevant grievances (ECF No. 22-3, PageID.117).

Dennis does not dispute that she failed to exhaust through Step III a grievance raising a failure-to-protect claim against Zirker arising from the incident on June 20, 2021. (ECF No. 27). Instead, she argues that she "filed a [Step I] grievance on June 24, 2021, but MDOC never issued an ID number for the grievance." (ECF No. 26, PageID.126). As such, Dennis contends that she "was unable to complete the grievance process because [s]he did not receive a respon[s]e to [her] initial grievance." (*Id.*, PageID.127). In other words, Dennis concedes that she did not pursue a grievance against Zirker through Step III, but argues that such failure should be excused because the grievance process was unavailable to her. As explained below, Dennis' argument lacks merit.

The U.S. Supreme Court has reiterated that the PLRA's exhaustion requirement hinges on the *availability* of administrative remedies; an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Thus, courts have recognized that "although completing [all steps of the grievance

6

process] is a sufficient condition, it is not always a necessary one." *Palmer v. Flore*, 3 F. Supp. 3d 632, 637 (E.D. Mich. 2014); *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (the Sixth Circuit requires an inmate to make affirmative efforts to comply with the administrative procedures and analyzes whether those efforts to exhaust were sufficient under the circumstances). In other words, where a prisoner makes reasonable efforts to exhaust a grievance, and her failure to exhaust is due to the exhaustion process being "unavailable," that failure cannot be grounds for finding her underlying claim to be unexhausted.

A prisoner cannot overcome a properly-supported summary judgment motion by simply asserting that the grievance process was "unavailable." Rather, as in all cases, the prisoner must make an affirmative showing with proper *evidence* to at least raise a material question of fact on the issue. *Alexander*, 576 F.3d at 558 (internal quotations omitted). Because it is undisputed that Dennis did not exhaust any relevant grievances, the issue here is whether she presented sufficient *evidence* to raise a material question of fact that she made *reasonable efforts* to exhaust the grievance process, but that the process was nevertheless "unavailable" to her. *See, e.g.*, *Young v. Jackson*, No. 12-12751, 2013 WL 8178397, at *8-9 (E.D. Mich. Nov. 13, 2013) (rejecting defendants' failure to exhaust argument where plaintiff provided copies of numerous letters requesting a Step II grievance appeal form from the appropriate grievance coordinator, but allegedly was not provided one); *Graham v. Chicowski*, No. 16-12258, 2017 WL 3097803, at *5 (E.D. Mich. Apr. 18, 2017) (finding that plaintiff raised a question of fact as to the "availability" of the grievance process where he provided copies of several letters he had written and evidence

7

demonstrating that his family made calls and wrote letters on his behalf to advance his grievance). Dennis has failed to meet that burden here.

As an initial matter, the parties dispute whether Dennis filed a Step I grievance at all. Dennis contends she did so, and provides a copy of what appears to be a Step I grievance dated June 24, 2021, complaining of a failure to protect against Zirker on June 20, 2021. (ECF No. 26, PageID.129).[2] Zirker replies that "[a]t best, Dennis' June 24, 2021, Step I grievance shows that she drafted a Step I grievance but does not show that she submitted it to MDOC for processing." (*Id.*, PageID.152). In support of her argument, Zirker provides an affidavit from WHV Grievance Coordinator Latasha Boa attesting that she has "no records" of the June 24, 2021, Step I grievance ever having been received by the WHV grievance office, and that if Dennis "had submitted a Step I grievance, I would

---

[2] Notably, Dennis' copy of the Step I grievance bears no MDOC grievance identifier nor any indication that such grievance was sent to or received by the MDOC. Some courts have found that a grievance bearing only the grievant's own writing, with no indicators that the MDOC had ever seen or received it, suggests that the prisoner did not actually file such grievance. *See, e.g.*, *Wilson v. Michigan Dep't of Corr.*, No. 2:18-CV-10008, 2019 WL 3759424, at *6 (E.D. Mich. Aug. 9, 2019) ("The grievances lack any indicia that Wilson ever submitted them to prison officials. For example, there is no notation of the date prison officials received it, no signature of the reviewing prison official, and no other writing that is not Wilson's. A grievance form with information input only by a prisoner, with nothing else, is not sufficient evidence of affirmative efforts to comply with the grievance procedures."); *Smith v. Hoffner*, No. 1:15-CV-82, 2017 WL 9480160, at *3 (W.D. Mich. Mar. 8, 2017) ("Noting that the grievances in question do not possess a grievance identifier number, Stepp asserts that the grievances 'were never actually filed.' . . . Plaintiff responds with nothing more than his unsubstantiated assertion that Defendants are not being truthful. Plaintiff offers no evidence regarding the specifics of his alleged attempts to submit the grievances in question."); *Mekkes v. Nagelle*, 2005 WL 1349120, at*2 (E.D. Mich. Mar. 22, 2005) ("None of the forms bear a MDOC grievance identifier or indicate the date on which the grievances were received, and plaintiff submitted no Step I responses. This suggests that plaintiff did not, in fact, file these grievances.").

have processed and logged it in the same way I log and process every Step I grievance from every prisoner . . ." (*Id.*, PageID.160).

The Court need not ultimately decide whether Dennis filed her Step I grievance, because even assuming she filed it, Dennis presented no evidence from which the Court could conclude that she took reasonable steps to exhaust that grievance through the three-step process, or that the later steps in the grievance process were "unavailable" to her. This is critical because, as explained above, the Policy requires a grievant to exhaust "all three steps of the grievance process." (ECF No. 24-2, PageID.116, ¶ C).

While Dennis argues in her response that she "was unable to complete the grievance process because [s]he did not receive a respon[s]e to [her] initial grievance" (ECF No. 26, PageID.127), not receiving a response does not mean the grievant cannot take reasonable steps to exhaust her grievance or that the grievance process was "unavailable" to her. Indeed, the Policy makes clear that the mere lack of a Step I response did not absolve Dennis of her obligation to pursue her grievance through Steps II and III of the grievance process. The Policy explicitly provides that, if a grievant does not receive a timely Step I response, in order to properly exhaust the grievance, she must still submit a Step II appeal "within ten business days after *the date the response was due*." (ECF No. 22-2, PageID.112, ¶ DD) (emphasis added) (explaining that after filing a grievance, "[a] grievant may file a Step II grievance if s/he is dissatisfied with the response received at Step I *or if s/he did not receive a timely response* . . . within ten business days after the date the response was due.") (emphasis added). Similarly, if the grievant does not receive a timely Step II response, she must still file a final appeal to Step III. (*Id.*, ¶ HH) (explaining that

9

after the Step II submission, "[a] grievant may file a Step III grievance if s/he is dissatisfied with the Step II response *or does not receive a timely response* . . . within ten business days after the date the response was due, including any extensions.") (emphasis added).³

Finally, while Dennis does not address this evidence, defendant Zirker notes that among the exhibits attached to Dennis' response, there is a letter addressed to the "Grievance Coordinator" dated June 30, 2021, which states, "I'm writing because I sent a grievance on 6-24-21 and haven[']t heard anything back on it yet. Can you please send me my Step 2." (ECF No. 26, PageID.135). Zirker argues, however, that Dennis did not provide any evidence that she ever submitted this letter, as Grievance Coordinator Boa averred in her affidavit that (1) she has "no records of either the June 24, 2021, Step I grievance or the June 30, 2021, kite having been received by the WHV grievance office"; and (2) if she had received a kite requesting a Step II grievance appeal form, she "would have provided the form and logged the date that [she] sent the form in the database," as she "would do this in all cases, including cases where the underlying Step I grievance had not been received or processed by [her] office." (ECF No. 27, PageID.153; ECF No. 28,

---

³ To the extent Dennis asserts in her response that the MDOC "never issued an ID number for the grievance" (ECF No. 26, PageID.126), she does not argue, but less demonstrate with evidence, that a lack of a grievance identification number prevented her from pursuing her grievance through the three-step process. *See, e.g.*, *Hailey v. Bruner*, No. 1:19-CV-224, 2021 WL 6112526, at *1 (W.D. Mich. Dec. 27, 2021) ("Furthermore, there is no evidence in the record to establish that his Step II grievance would have been rejected because he did not have a grievance identification number."); *Hedlund v. Steiner*, No. 1:21-CV-294, 2022 WL 1590619, at *2 (W.D. Mich. May 19, 2022) ("Indeed, Plaintiff has never argued, let alone demonstrated, that he was unable to pursue his grievance through Steps II and III because he did not possess a grievance identifier."). To the contrary, Grievance Coordinator Boa avers that she "would have provided the [Step II grievance appeal] form and logged the date that [she] sent the form in the database . . . [even in] cases where the underlying Step I grievance had not been received or processed by [her] office." (ECF No. 28, PageID.160).

10

PageID.160) ("Similarly, if Dennis had submitted a kite asking about a Step I grievance or requesting a Step II grievance appeal form, I would respond to it according to the process I discussed in the previous paragraphs.").

Zirker further appropriately notes that, even assuming Dennis submitted her June 24, 2021 grievance and it was received by the grievance office later that day, Dennis would have "had no reason to submit a kite on June 30, 2021," because she hadn't received a Step I response by then, and Paragraph Z of the Policy provides that a Step I grievance "shall be responded to *within 15 business days after receipt of the grievance*." (ECF No. 27, PageID.153; ECF No. 22-2, PageID.111, ¶ Z) (emphasis added). That Dennis allegedly requested a "Step 2" "because" she hadn't "heard anything back" on her grievance within six calendar days (ECF No. 26, PageID.135) demonstrates not that the grievance procedures were "unavailable" to her, but that she was not following the Policy and was not allowing the MDOC to review the matter as directed by the Policy. Accordingly, such a request by Dennis – assuming she made it – would not constitute evidence from which the Court could find that the MDOC failed to follow its own Policy or otherwise made the grievance process "unavailable" to Dennis. To that end, it is noteworthy that Dennis provides no evidence demonstrating that she ever attempted to obtain a Step II grievance appeal form *after* the time for a Step I response to her grievance had lapsed, which would have been the appropriate time for her to do so.

In sum, Dennis failed to present evidence showing that she made *reasonable* efforts to exhaust the grievance process, but that the process was "unavailable" to her. *See, e.g., Young*, 2013 WL 8178397, at *8-9; *Graham*, 2017 WL 3097803, at *5. Accordingly,

11

Dennis fails to raise a material question of fact that she took reasonable actions to exhaust any relevant grievance, or that the three-step grievance process was "unavailable" to her. *Jones*, 549 U.S. at 200. Thus, Dennis' claim against defendant Zirker is not properly exhausted and defendant Zirker's motion for summary judgment should be granted.

### III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that defendant Zirker's Motion for Summary Judgment **(ECF No. 22)** be **GRANTED**.

Dated: April 15, 2024　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2024.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager